UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KRISTOPHER K. DORR,

                Plaintiff,               Civil Action No. 10-cv-13822

          v.                    District Judge Arthur J. Tarnow
                                        Magistrate Judge Laurie J. Michelson

FORD MOTOR CO. *et al.*,

                Defendants.

_____/

## REPORT AND RECOMMENDATION TO GRANT DEFENDANTS AUTOALLIANCE INTERNATIONAL INC., AAI EMPLOYEE SERVICES, LLC AND FORD MOTOR COMPANY'S MOTION TO DISMISS CLAIMS AND TO DENY REQUEST FOR INJUNCTIVE RELIEF [Dkt. 68, 70]

       This matter is before the Court on Defendants AutoAlliance International, Inc. ("AutoAlliance"), AAI Employee Services, LLC ("AAI") and Ford Motor Company's Motion to Dismiss Claims and Request for Injunctive Relief. (Dkt. 68, Defs.' Mot. Dismiss; Dkt. 70, Def. Ford's Concurrence.) Plaintiff Kristopher Dorr ("Dorr") responded by seeking to strike the Motion. (Dkt. 72, Pl.'s Mot. Strike; Dkt. 73, Suppl. Mot. Strike.) This case was referred to the Court for all pretrial matters pursuant to 28 U.S.C. § 636(b)(1)(A). (Dkts. 10, 27.) The Court finds that the decision process would not be significantly aided by oral argument and, therefore, pursuant to E.D. Mich. L.R. 7.1(e)(2), will resolve the Motion on the briefs submitted. For the following reasons, the Court RECOMMENDS that Defendants' Motion to Dismiss be GRANTED and Request for Injunctive Relief be DENIED.

# I. BACKGROUND

## A. Facts

For many years Plaintiff worked at an AutoAlliance International, Inc. assembly plant in Flat Rock, Michigan and was employed by AAI Employee Services, LLC.  (Dkt. 20 at 3, ¶ 1.) AutoAlliance is a joint venture between Ford Motor Company and Mazda Motor Corporation.  (*Id.*) On August 14, 2006, Plaintiff went on inactive status due to a medical leave necessitated by his paranoid schizophrenia.  (Dkt. 68, Defs.' Mot. Dismiss, Ex. 1;  Dkt. 58, AAI Resp. at ¶ 9 and Ex. B.)[1]  In the fall of 2010, Plaintiff submitted a medical certification form indicating he would be on leave until May 30, 2011.  (Dkt. 53, Pl. Motion for Restraining Order. at Ex. A.) The reason for the continued leave was "Disorganized thoughts, Paranoid, Dillusional [sic]; Not in touch with reality" (per Chalakudy V. Ramakrishna, M.D.)  *Id.*  Plaintiff's medical leave was set to expire on May 30, 2011.  (Dkt. 68, Defs.' Mot Dismiss at 3.)  Pursuant to AutoAlliance's procedures, Plaintiff needed to supplement his medical documentation if he wanted his medical leave, and disability payments, extended beyond May 30, 2011.  (*Id.*).

On June 8, 2011, AutoAlliance sent Plaintiff a reminder letter that indicated that he must update his medical leave status. (Dkt. 58, Def. Resp. to Mot. For Restraining Order, Ex. E.)  Two

---

[1] Many of Plaintiff's pleadings reference that he has been diagnosed with paranoid schizophrenia. (*See, e.g.,* Dkt. 53 at ¶ 3.)  He is proceeding pro se and his allegations and motion papers are often very difficult to decipher and reflect the delusional thoughts that necessitated his medical leave.  As one physician noted, Plaintiff "is convinced that someone is controlling and/or reading his thoughts using a transmitter in his head. . . ." (Dkt. 44 at Ex. C at ECF 33.)  For example, in his filing to strike the current summary judgment motion, Plaintiff references the CIA's MKULTRA program for "Behavioral Modification of Humans," which he claims gives a "complete explanation of the harassment and medical experiments that the Defendants are using."  (Dkt. 72 at ¶10.)

subsequent letters on June 29, 2011 and July 18, 2011 further advised Plaintiff that he needed to

provide information concerning his illness.  (Dkt. 68, Defs.' Mot. Dismiss, Exs. 6 and 7.)  Plaintiff

failed to supplement his medical documentation; thus, his leave expired.  (*Id.* at 3.)  AutoAlliance

terminated his employment effective July 27, 2011.  (*Id.* at 3 and Ex. 8.)

### B.  Procedural History

Well before his employment was terminated, Plaintiff filed this lawsuit on September 24,

2010, against Ford claiming, among other things, that he was wrongfully denied disability pay.

(Dkt. 1, Pl.'s Compl. at 2.)  On January 10, 2011, Plaintiff filed an Amended Complaint that

contained the following summary of his allegations:

> I began working for the above named employer [Ford] on March 22,
> 1998.  I am currently employed as a Line Worker.  I am a qualified
> individual with a disability.
>
> On March 4, 2010, I became aware that someone at the Post Office
> is sending my disability checks back to the insurance company
> [Unicare].  I believe it is an ex-Ford employee doing it at the request
> of my superintendent [Roderick Gray], who is trying to get me to quit
> my job. In addition, on May 19, 2010, I overheard my superintendent
> speaking with others about how he tried to set me up to be fired in
> 2006.  I heard this over the loudspeakers in my neighborhood, while
> working out at home. I believe he was speaking in his car and the
> Ford Sync technology somehow came over the speakers.
>
> I believe I have been discriminated against by being subjected to
> harassment and intimidation, based on my disability, in violation of
> the Americans with Disabilities Act of 1990, as amended.

(Dkt. 17 at 3.)

In its Affirmative Defenses to the Amended Complaint, Ford advised that it was not

Plaintiff's employer – AAI was.  (Dkt. 20 at 3, ¶ 1.)  Magistrate Judge Morgan allowed Plaintiff to

amend his complaint a second time and this Court permitted that amendment to include Plaintiff's

most likely employers.  (Dkts. 23, 39.)  Plaintiff's Second Amended Complaint alleges that Defendants Ford Motor Company, AAI Employee Services, AutoAlliance International Incorporated, Mazda Motor Corporation and Roderick Maurice Gray violated the Equal Pay Act ("EPA"), the Americans with Disabilities Act ("ADA"), and the Genetic Information Non-Discrimination Act of 2008 ("GINA").  (Dkt. 23, Pl.'s 2d Am. Compl. at 2.)  Plaintiff also alleges Defendants engaged in illegal electronic surveillance, identity theft, assault, stalking and sodomy. (*Id.*)

## II.  ANALYSIS

### A.  Legal Standards

#### 1.  *Converting a Motion to Dismiss to a Motion for Summary Judgment under Fed. R. Civ. R. 12(d)*

As an initial matter, this Court notes that Defendants title their Motion as a "Motion to Dismiss."  (Dkt. 23.)  However, Defendants have already filed an Answer in this matter.  (Dkts. 8, 20, 29.)  *Scheid v. Fanny Farmer Candy Shops, Inc*., 859 F.2d 434, 435 n. 1 (6th Cir.1988) (it is improper to file a motion to dismiss after a responsive pleading per Fed. R. Civ. P. 12(b)).  In addition, Defendants attach sixteen exhibits to their "Motion to Dismiss."  (Dkt. 68, Defs.' Mot. Dismiss, Ex. 1-16.)  Under Federal Rule of Civil Procedure 12(d):

> If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56.  All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion.

The Sixth Circuit considers documents that a defendant attaches to a motion to dismiss part of the pleadings *only* if they are public record or "are referred to in the plaintiff's complaint and are central to [his] claim."  *Weiner v. Klais & Co.*, 108 F.3d 86, 89 (6th Cir. 1997) (quoting *Venture*

*Assoc. V. Zenith Data Sys.*, 987 F.2d 429, 431 (7th Cir. 1993)).

Among the exhibits Defendants attach to their Motion to Dismiss are: 1) Plaintiff's Medical Leave Report; 2) Plaintiff's W-2s; 3) Plaintiff's medical records; 4) Several letters from AutoAlliance to Plaintiff; and 5) Records regarding disability leave payments. (Dkt. 68, Defs.' Mot. Dismiss, Ex. 1-9.) These documents are not a matter of public record (indeed, Plaintiff's medical records are filed under seal), and pertain to matters outside Plaintiff's complaint under Rule 12(d). The Court notes that the parties have had a "reasonable opportunity to present all the material that is pertinent" to a motion for summary judgment. Defendants filed a 19 page Motion with several pages of exhibits. (Dkt. 68, Defs.' Mot Dismiss.) Plaintiff filed two separate responses on September 16, 2011 and September 21, 2011. (Dkt. 72, Pl. Mot. Strike; Dkt. 73, Supp. to Mot. Strike.) Accordingly, this Court will treat Defendants' Motion as one for summary judgment. *Auto-Owners Ins. Co. v. Edward D. Jones & Co. Employee Health and Welfare Program*, 759 F. Supp. 2d 895, 902 (W.D. Mich. 2010) (converting a Motion to Dismiss to a Motion for Summary Judgment because Defendant attached materials that were outside the pleadings and both parties had a reasonable opportunity to present all pertinent material.)

Therefore, with the exception of the allegations pertaining to the unserved Defendants Mazda and Mr. Gray, which this Court considers for dismissal sua sponte, the Court will analyze Plaintiff's allegations under the summary judgment standard detailed below.

## 2. *Motion for Summary Judgment Under Fed. R. Civ. P. 56*

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material only if it might affect the outcome of the case under the governing law. *See*

5

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).  On a motion for summary judgment, the Court must view the evidence, and any reasonable inferences drawn from the evidence, in the light most favorable to the non-moving party.  *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citations omitted); *Redding v. St. Edward*, 241 F.3d 530, 531 (6th Cir. 2001).

The moving party has the initial burden of demonstrating an absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  If the moving party carries this burden, the party opposing the motion "must come forward with specific facts showing that there is a genuine issue for trial." *Matsushita*, 475 U.S. at 587.  The Court must determine whether the evidence presents a sufficient factual disagreement to require submission of the challenged claims to a jury or whether the moving party must prevail as a matter of law.  *Anderson*, 477 U.S. at 252 ("The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.").

### 3.  Sua Sponte Dismissal for Failure to State a Claim

Plaintiff is proceeding in forma pauperis.  Thus, under 28 U.S.C. § 1915(e)(2) this Court may at any time sua sponte dismiss Plaintiff's Complaint if it determines that the action is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief against a defendant who is immune from such relief.  With regard to failure to state a claim under 28 U.S.C. § 1915(e)(2), the Court applies the standards under Federal Rule of Civil Procedure 12(b)(6).

When deciding a motion under Rule 12(b)(6), "[t]he court must construe the complaint in the light most favorable to the plaintiff, accept all factual allegations as true," and determine whether the plaintiff has alleged "enough factual matter" to "state a claim to relief that is plausible on its

6

face." *Cline v. Rogers*, 87 F.3d 176, 179 (6th Cir. 1996); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544,

556 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the

court to draw the reasonable inference that the defendant is liable for the misconduct alleged."

*Ashcroft v. Iqbal*, __ U.S. __, 129 S. Ct. 1937, 1949 (2009) (citing *Twombly*, 550 U.S. at 556). The

plausibility standard does not require a plaintiff to plead facts showing that liability is probable, "but

it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citing *Twombly*,

550 U.S. at 556). Where a complaint pleads facts that are "merely consistent with" a defendant's

liability, a plaintiff has failed to "nudge[]" his claims "across the line from conceivable to plausible."

*Twombly*, 550 U.S. at 557.

        The Court is mindful, however, that "[a] pro se complaint . . . must be held to less stringent

standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007

(citing *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). Even so,

>           the duty "does not require [a court] to conjure up unpled allegations,"
>           *McDonald v. Hall*, 610 F.2d 16, 19 (1st Cir. 1979), or to create a
>           claim for a plaintiff. *Clark v. Nat'l Travelers Life Ins. Co.*, 518 S.2d
>           1167, 1169 (6th Cir. 1975). To command otherwise would require
>           the Court "to explore exhaustively all potential claims of a pro se
>           plaintiff, [and] would also transform the district court from its
>           legitimate advisory role to the improper role of an advocate seeking
>           out the strongest arguments and most successful strategies for a
>           party." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir.
>           1985).

*Armstead v. Bush*, No. Civ.A 305CV274H, 2005 WL 1503556, at *2 (W.D. Ky. June 23, 2005);

*accord Bonner v. Rechtzigel*, No. 10-15069, 2011 WL 1336678, at *1 (E.D. Mich. Apr. 7, 2011).

## B. The District Court Should Grant Summary Judgment as to Defendant Ford Motor Company because It Is Not Plaintiff's Employer

While it is difficult to fully comprehend the Plaintiff's causes of action, the essence of his

Complaints appears to be a claim of discrimination in violation of the ADA, the EPA and GINA.

(Dkt. 23, Second Am. Compl. at 1-2.)] This requires the Court to determine whether or not Ford is

Plaintiff's employer.  The United States Supreme Court has instructed courts to use the "common

law of agency" when determining if a person is an "employee under the various federal employment

statutes."  *Nationwide Mut. Ins. Co. v. Darden*, 503 U.S. 318, 322-24, 112 S. Ct. 1344, 117 L. Ed.

2d 581 (1992); *Cmty. For Creative Non-Violence v. Reid*, 490 U.S. 730, 109 S. Ct. 2166, 104 L. Ed.

2d 811 (1989).  The Sixth Circuit has used both the "common law of agency" and an "economic

realities' test" in the past.  *Bryson v. Middlefield Volunteer Fire Dep't, Inc*., 2011 U.S. App. LEXIS

18447 (6th Cir. Sept. 2, 2011); *Shah v. Deaconess Hosp*., 355 F.3d 496, 499 (6th Cir. 2004)

(applying the "economic realities' test").  Most recently, the Sixth Circuit used the common law of

agency to determine whether an individual was an employee under various federal employment

statutes.  *Bryson*, 2011 U.S. App. LEXIS 18447, at * 9.  Thus, this Court will use that test.  Notably,

"[t]he substantive differences between the two tests are minimal."  *Shah*, 355 F.3d at 499.

In *Darden*, the U.S. Supreme Court reiterated that:

> "In determining whether a hired party is an employee under the general common law of agency, we consider the hiring party's right to control the manner and means by which the product is accomplished.  Among the other factors relevant to this inquiry are the skill required; the source of the instrumentalities and tools; the location of the work; the duration of the relationship between the parties; whether the hiring party has the right to assign additional projects to the hired party; the extent of the hired party's discretion over when and how long to work; the method of payment; the hired party's role in hiring and paying assistants; whether the work is part of the regular business of the hiring party; whether the hiring party is in business; the provision of employee benefits; and the tax treatment of the hired party."

*Darden*, 503 U.S. at 323-24 (quoting *Reid*, 490 U.S. at 751-52).

8

Applying this test to this case, the Court finds that Plaintiff is not an employee of Ford. First, Plaintiff's "Employee Personal Data and History" form indicates that he worked for AAI Assembly[2] from March 22, 1999 through July 14, 2006, when AAI put Plaintiff on "inactive" status. (Dkt. 68, Defs.' Mot. Dismiss at Ex. 1.) This is confirmed by Plaintiff's W-2 forms. (*Id*. at Ex. 3.) Moreover, Plaintiff's Medical Leave Report indicates that Plaintiff worked a normal Monday through Friday shift for AAI in the "Ford Motor Company" Group. (*Id*.) This is consistent with the formation of AutoAlliance and AAI as a "joint venture between Ford Motor Company and Mazda Motor Company." (*Id*. at Ex. 2.) Plaintiff performed assembly work, which is a "part of the regular business" of AutoAlliance. (*Id*. at Ex. 1 and 3.) In addition, AutoAlliance administered Plaintiff's medical leave of absence. (*Id*. at Exs. 6,7,8.) Plaintiff's disability payment records show both "Ford Motor Company" and "AAI Employee Services Company LLC" under "Group Information" regarding insurance. (*Id*. at Ex. 9.) Ford Motor Company may have included AAI and, therefore, Plaintiff, on its long-term disability insurance plan. (*Id*.) This accounts for Plaintiff naming Ford as a Defendant in this case. It does not, however, create a genuine issue of material fact as to the identity of Plaintiff's employer, however, because Ford does not dispute this fact and it does not make Ford the employer. (*Id*.) It is clear that for tax purposes, Plaintiff was an employee of AAI. (*Id*. at Ex. 3.) Moreover, it is clear – analyzing the other relevant factors of the "common law of agency" test – that Plaintiff was an employee of AAI. Plaintiff has not come forward with specific facts showing that there is any disputed fact issue regarding his employer. Because this is a prerequisite for the federal discrimination claims, this Court recommends that the District Court

---

[2]AAI is a holding company that pays AutoAlliance employees. (Dkt. 68, Defs.' Mot. Dismiss at Ex. 3.)

grant summary judgment as to Defendant Ford Motor Company as to all Plaintiff's federal discrimination claims.

### C. The District Court Should Grant Summary Judgment as to Plaintiff's Allegations of Discrimination under the EPA

The Equal Pay Act ("EPA"), 29 U.S.C. § 206(d), "prohibits employers from paying an employee at a rate less than that paid to an employee of the opposite sex for performing equal work." *Beck-Wilson v. Principi*, 441 F.3d 353, 359 (6th Cir. 2006). In order to state a claim for a violation of the EPA, Plaintiff must allege that AAI paid different wages to employees of opposite sexes for equal work. *Id.* Plaintiff has not made this allegation in any of his complaints (Dkts. 1, 17, 23) nor has he provided any other evidence to support such a claim. As such, Plaintiff fails to create a genuine issue of material fact for trial with respect to his EPA claim and summary judgment is warranted as to all Defendants.

### D. The District Court Should Grant Summary Judgment as to Plaintiff's Claims for Failure to Pay Fringe Benefits under the Michigan Wages and Fringe Benefits Act

The MWFBA requires that an employer pay fringe benefits according to the terms set forth in a written contract or policy. M.C.L. § 508.473. Plaintiff bases his MWFBA claim on his allegation that he did not receive disability checks. (Dkt. 68, Defs. Mot. Dismiss at 6.) Specifically, Plaintiff claims that Defendant Roderick Maurice Gray "has something to [do] with" him not receiving disability checks from Unicare. (Dkt. 23, Pl.'s Am. Compl. at 7.) In prior complaints, Plaintiff alleged that Mr. Gray was somehow having the disability checks sent back to Unicare. Plaintiff, however, has provided no evidence to support such an allegation. And Plaintiff states no allegations against the corporate Defendants for failing to follow the terms of the written policy. (*Id.*) Likewise, Plaintiff does not attach the written policy to his Complaint or response. (Dkt. 23,

Pl's 2d Am. Compl; Dkt 72, Pl's Mot. Strike.)

However, the absence of the policy does not preclude this Court from making a recommendation as to whether or not a genuine issue of material fact exists as to Plaintiff's MWFBA claim.  Defendants state that "AutoAlliance, through Unicare, paid Plaintiff all of his disability benefits from 2006 (onset of his medical leave) through May 31, 2011 (date of termination)."  (Defs. Mot. Dismiss at 7.)  Defendants support this claim with an ALICS Payment Worksheet. (*Id*. at Ex. 9.)  Plaintiff has not come forward with any evidence to dispute this claim. (Dkt. 72, Pl.'s Mot. Strike.)  Because Plaintiff does not set forth or provide any facts tending to show that Defendants AAI or AutoAlliance failed to follow the terms set forth in a written contract or policy, summary judgment is warranted.  In addition, Plaintiff's claim that Defendant Gray had "something to [do] with" him not receiving his disability benefits does not state a claim under the MWFBA.  As such, this Court recommends sua sponte dismissal of Defendant Gray, an unserved Defendant.  The Court also recommends summary judgment as to the MWFBA claims against all the corporate Defendants.      **E.  Plaintiff is Not a Qualified Individual Under the ADA**

The Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12101 *et seq*., as amended by the ADA Amendments Act of 2008, Pub. L. No. 110-325, 122 Stat. 3553 (2008) (effective January 1, 2009), prohibits discrimination against a "*qualified individual* on the basis of disability."  42 U.S.C. § 12112(a) (emphasis added).  A "qualified individual" is one who, "with or without reasonable accommodation, can perform the essential functions of the employment position."  42 U.S.C. § 12111(8) (emphasis added.).

It is undisputed that Plaintiff is disabled.  It is also undisputed that Plaintiff is not a "*qualified individual*" under the ADA because he cannot perform the essential functions of his previous

11

position.[3]  Indeed, that is why Plaintiff was collecting disability benefits for nearly five years.  A third-party provider has determined that he is not capable of working.  In other words, he is not capable of performing the essential functions of his position.  Therefore, Plaintiff fails to create a genuine issue of material fact for trial on his ADA claim, and summary judgment is warranted as to all Defendants.

### F.  The District Court Should Grant Summary Judgment as to Plaintiff's Claims under GINA

Title II of the Genetic Information Non-Discrimination Act of 2008 ("GINA") prohibits employers from failing or refusing to hire, discharging, or otherwise discriminating against any employee with respect to the compensation, terms, conditions, or privileges of employment because of genetic information with respect to the employee.  29 C.F.R. § 1635.1.  "[G]enetic information means information about – (i) An individual's genetic tests; (ii) The genetic tests of that individual's family members; and (iii) The manifestation of a disease or disorder in family members of such individual (family medical history)."  29 C.F.R. §1635.3(c).

Plaintiff's Complaint and the subsequent record are devoid of any allegations and facts regarding genetic tests, the genetic tests of Plaintiff's family members, or the manifestation of a disease or disorder in his family members.  More specifically, there is no evidence that Plaintiff was

---

[3]There is an inherent difference between being "disabled" under the Social Security Act; being a "qualified individual" with a disability under the ADA; and collecting long-term disability benefits from a third-party provider under a long-term disability plan.  *See Ford v. CLECO*, No. 05-0711-A, 2006 U.S. Dist. LEXIS 50300 (W.D. La. July 24, 2006).  "[T]he [SSA] program benefits people who are so disabled that they are unable to engage in their previous work or in another kind of substantial gainful work while the ADA protects disabled employees who can perform the essential functions of their jobs, including those who can do so with reasonable accommodation."  *See id*. at *7-8.  Moreover, under most long-term disability programs provided by a third-party provider, a claimant must prove that she is unable to work.  *See id*. at *15.

discriminated against because of his mental illness.  To the contrary, the record demonstrates that Plaintiff was properly put on inactive status and remained there until he neglected to provide the necessary documentation of a continuing illness.  Therefore, Plaintiff fails to create a genuine issue of material fact for trial on this claim and summary judgment is warranted as to all Defendants.

### G.  The District Court Should Grant Summary Judgment as to Plaintiff's Claim for Illegal Electronic Surveillance

The Federal Wiretapping Act, 18 U.S.C. § 2510 et seq., prohibits the intentional interception of any "wire, oral, or electronic communication" as well as the disclosure or use of such information obtained in violation of the act.  18 U.S.C. § 2511.

Plaintiff's Second Amended Complaint is replete with allegations regarding different individuals intercepting his private thoughts.  For example:

- I overheard a person named Gloria Redmond on my phone talking about me and my Real Estate business.  They were repeating what I was thinking and using the electrical currents in my brain and ears which I called advanced technology. They were using hidden speakers in the neighborhood to transmit my thoughts throughout the neighborhood.

- Occupants in the apartment below me which is unit 216 [were] talking about my job and they were saying that I am a millionaire because of the harassment that Rod Gray was doing to me they also said that the monitoring of my thoughts through Remote Neural Monitoring was [copyright] infringement.  The occupant also said that their group needs to dismantle because I knew who they were.

- I overheard occupants in the apartment complex talking about events of 2006 when I took a trip to Georgia.  They said that I was going to be sacrificed by people in witchcraft.  I was followed down the freeway between Atlanta and Jacksonville to Moultrie Ga.  They also said that the FBI was involved.  I was being watched driving and sleeping on the freeway and the FBI were the ones harassing me.

13

- I had an Explorer in 2006 and I was hearing voices coming out of the speakers in my SUV. I told my Therapist and Psychiatrist about it and they said that I was hallucinating. I began to hear the voices more and more. They were saying in 2006 that I could not beat what they were doing. I then remembered that the Explorer that I was driving in 2006 had a GPS tracking device built into the vehicle standard.

- I was listening to the show hour with the Governor on Detroit Public Radio and they were speaking with Jennifer Granholm. She was talking about how the young people were leaving the State of Michigan. I cleared my throat as she was talking and she heard me. She began to tap on the microphone to indicate she was able to hear me.

(Dkt. 23, Pl.'s Am. Compl, at 8, 9, 10, 12.)

Plaintiff's Psychiatrist attributes these allegations to Plaintiff's paranoid schizophrenia:

Christopher Door [sic] has paranoid schizophrenia. He is convinced that someone is controlling and/or reading his thoughts using a transmitter implanted in his head by Muslim extremists. He has asked me for referrals to several specialists to pursue his suspicions. I refuse to do any further referrals (he has had negative skull x-rays and CT scans of his brain).

(Dkt. 68, Defs.' Mot. Dismiss at 10.)

Plaintiff has come forward with no facts to show that any of the Defendants used any sort of device to illegally intercept his "wire, oral, or electronic communication." Plaintiff simply speculates to such. Plaintiff's speculation cannot defeat a Motion for Summary Judgment. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). As such this Court recommends that the District Court grant summary judgment on this claim as to all Defendants.

**H.  The District Court Should Grant Summary Judgment as to Plaintiff's Assault Claim**

Under Michigan law, assault is any intentional, unlawful offer of corporal injury to another

14

by force under circumstances which reasonably create fear of imminent danger coupled with the apparent ability to carry out such attempt if it is not prevented. *Tinkler v. Richter,* 295 Mich. 396, 401, 295 N.W. 201 (1940). Corporate defendants can only be held liable for acts of assault committed by its employees within the scope of employment. *Ptasznikc v. Johnson*, 63 Mich. App. 410 (1975); *Hersh v. Kentfield Builders, Inc*., 385 Mich. 410 (1971).

In Plaintiff's Second Amended Complaint, Plaintiff repeatedly alleges that coworkers provoked him into fights. (Dkt. 23, Pl.'s Am. Compl. at 3, 4.) He also alleges that a coworker pushed an air gun used to bolt moon roofs onto cars into him. (*Id*. at 4.) However, Plaintiff never alleges that any coworker *intentionally threatened* to cause injury to him. (*Id*.) This is an essential element to the cause of action. *See Tinkler*, 295 Mich. at 401. In addition, he does not refute Defendants' assertion that no such assaults ever occurred. (Dkt. 72, Pl.'s Mot. Strike; Dkt. 73, Pl.'s Mot. Strike.) As such, there is no genuine issue of material fact with regard to this issue that warrants trial, and summary judgment is warranted as to all Defendants.

### I. Plaintiff Cannot Bring a Private Action for Identity Theft or Stalking

Plaintiff also brings two claims under federal criminal statutes: a claim for identity theft under 18 U.S.C. § 1028(a)(7) and stalking under 18 U.S.C. § 2261A. Absent a criminal statute specifically providing for a private right of action – which these do not – "Only the United States, through a federal Grand Jury or a United States Attorney, has the authority to file a complaint against individuals for violation of criminal statutes." *Booth v. Elliott*, No. 00-1648-ST, 2000 WL 33948585 (D. Or. Jan. 10, 2000); *American Postal Workers Union v. Independent Postal System*, 481 F.2d 90,92 (6th Cir. 1973) ("[T]he general rule is that a private right of action is not maintainable under a criminal statute."). Therefore, Plaintiff cannot bring a private cause of action

for identity theft or stalking.  As such, there is no genuine issue of material fact with regard to these claims, and summary judgment is warranted as to all Defendants.

### J.  Plaintiff Cannot Bring a Private Cause of Action for Sodomy

Plaintiff also brings a claim of sodomy under M.C.L. § 750.158.  Since M.C.L. § 750.158 does not create a private cause of action, it can only be prosecuted via proceedings instituted by the Attorney General.  *Lane v. KinderCare*, 231 Mich.  App. 689, 695-96 (1998).  Moreover, Plaintiff has not pled a single fact supporting this claim.  (Dkt. 23, Pl.'s Am. Compl.)  As such, there is no merit to Plaintiff's claim of sodomy and summary judgment is warranted as to all Defendants.

### K.   Plaintiff's Claims Against Defendant Mazda Should be Dismissed Without Prejudice

In addition to the deficiencies set forth above regarding Plaintiff's attempt to bring employment-related claims under the  EPA, ADA, and GINA as well as criminal-based claims for illegal electronic surveillance, identity theft, assault, stalking and sodomy, Plaintiffs' Complaint contains no allegations against Mazda.  In fact, the only time the Complaint references Mazda is Plaintiff's explanation that he worked on "the moon roofs of the Mazda 6." (*Id.*) While Defendants admit that Mazda is one of the joint venture entities that comprise AAI, that limited fact fails to state a claim upon which relief can be granted under any of the causes of action pled by Plaintiff.  As such, this Court recommends that the District Court sua sponte dismiss the Complaint as to Defendant Mazda pursuant to 28 U.S.C. § 1915(e)(2).

### L.  The District Court Should Deny Defendants' Request for Injunctive Relief

Regarding the Court's power to issue an injunction against a vexatious pro per litigant, a Court in this District has stated:

> When a litigant abuses the privilege of proceeding in forma pauperis

16

> by repeatedly filing frivolous lawsuits, federal courts have the inherent power to impose appropriate sanctions, including restrictions on future access to the judicial system, to deter further frivolous, harassing or duplicative lawsuits.

*Marshall v. Beshear*, No. 10-cv-663-R, 2011 U.S. Dist. LEXIS 2369 (W.D. Ky. Jan. 10, 2011) (citations omitted).

Indeed, the Sixth Circuit has upheld injunctions imposing prefiling restrictions on plaintiffs with histories of repetitive or vexatious litigation. *Feathers v. Chevron U.S.A., Inc.*, 141 F.3d 264, 269 (6th Cir. 1998); *Ortman v. Thomas*, 99 F.3d 807, 811 (6th Cir. 1996). Among these prefiling restrictions is an order to receive leave of court before filing lawsuits. *Reneer v. Sewell*, 975 F.2d 258, 260-61 (6th Cir. 1992). However, in most of the instances where a district court has granted such injunctions, the plaintiff's history of vexatious litigation was much more extensive than Plaintiff's own history. *Marshall*, 2011 U.S. Dist. LEXIS 2369 at *4 (plaintiff had filed twenty-nine lawsuits in one court); *Reneer*, 975 F.2d at 261 (plaintiff had filed seventeen cases in the district court and nine appeals); *Ortman v. Thomas, et al.*, 99 F.3d 807, 811 (6th Cir. 1996) (plaintiff filed several lawsuits relating to a "broad conspiracy involving lawyers, law firms and state and federal judges" from 1978 through 1995).

As noted by Defendants, Plaintiff has filed several other lawsuits in this district:  1) *Dorr v. Ford Motor Company and Mazda Motor Corporation* (Case No. 10-cv-14090, Hood, J.); 2) *Dorr v. AT&T* (Case No. 10-cv-14583, Borman, J.); 3) *Dorr v. Ford Motor Company, et al.* (Case No. 11-cv-11542, Zatkoff J.); and 4) *Dorr v. City of Detroit, Detroit Policy Department, Lieutenant Tony Cannon, Detective Sylvia Ellison, and Al Cannon Sr.* (Case No. 11-cv-13369, Roberts, J.). (Dkt. 68, Defs.' Mot. Dismiss at 4.)  Three out of four of these cases were dismissed sua sponte. (*Id*; Dkt. 71, Defs.' Supp. Brief on Mot. Dismiss.)  This Court properly utilizes its screening function under 28

17

U.S.C. § 1915(e)(2)(B) and seeks to eliminate vexatious cases.  To the extent some cases survive that initial screening, there is nothing to prevent the defendants from filing an early motion to dismiss – which Defendants here opted not to do.    Moreover, Plaintiff has not encroached on the Court's time and personnel to the extent required by the Sixth Circuit as a prerequisite for such an injunction.

Thus, at this time, the Court does not recommend the extraordinary relief requested – the issuance of a filing injunction.

## III.  RECOMMENDATION

For the foregoing reasons, the Court RECOMMENDS that Defendants' Motion to Dismiss be GRANTED and Request for Injunctive Relief be DENIED

## IV.  FILING OBJECTIONS TO THIS REPORT

The parties to this action may object to and seek review of this Report and Recommendation within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596 (6th Cir. 2006); *United States v. Sullivan*, 431 F.3d 976, 984 (6th Cir. 2005).  The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation.  *McClanahan v. Comm'r Soc. Sec.*, 474 F.3d 830 (6th Cir. 2006) (internal quotation marks omitted); *Frontier*, 454 F.3d at 596-97.  Objections are to be filed through the Case Management/Electronic Case Filing (CM/ECF) system or, if an appropriate exception applies, through the Clerk's Office.  *See* E.D. Mich. L.R. 5.1.  A copy of any objections is to be served upon this magistrate judge but this does not constitute a filing.  *See* E.D. Mich. LR 72.1(d)(2).  Once an

18

objection is filed, a response is due within fourteen (14) days of service, and a reply brief may be

filed within seven (7) days of service of the response.  E.D. Mich. LR 72.1(d)(3), (4).


s/Laurie J. Michelson
LAURIE J. MICHELSON
UNITED STATES MAGISTRATE JUDGE

Dated:  September 27, 2011


## CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing document was served on the attorneys and/or
parties of record by electronic means or U.S. Mail on September 27, 2011.


s/J. Johnson
Deputy Clerk


19